# MEMORANDA

# CASES NOT REPORTED IN FULL.

## PETER KUNEY, Respondent, *v.* THE AMAZON INSURANCE COMPANY, Appellant.

*Foreign corporation—when its general agent in this State is presumed to have power to appoint sub-agents.*

APPEAL from an order of the Special Term denying the defendant's motion for a new trial, on a case setting forth the evidence and the exceptions made after a verdict had been rendered in the plaintiff's favor for the sum of $345 damages. On a former trial the plaintiff was nonsuited; the nonsuit was set aside at the General Term and a new trial ordered.

The action was brought to recover damages for the breach of a parol contract for the insurance of the plaintiff's property alleged to have been made by the defendant. Between the time of making the alleged agreement and the refusal of the defendant to issue the policy demanded, the property was destroyed by fire. The chief controversy is over the question whether the contract sued upon and proved on the trial was made by one lawfully representing the company and authorized to make the contract.

The defendant is a foreign insurance company, chartered under the laws of the State of Ohio, having its home office in Cincinnati. In 1871 it established an agency in this State, at the village of Seneca Falls, for the purpose of doing a fire insurance business in all its branches, as authorized by the law of its creation, and appointed Josiah T. Miller, of that place, to manage and superintend the same. His general powers and functions are set forth in his commission, and are as follows: "Josiah T. Miller is hereby appointed and duly constituted an agent of the Amazon Insurance Company of Cincinnati, Ohio, with full powers to receive proposals for insurance against loss or damage by fire and lightning, to act as surveyor, to appoint surveyors for property to be insured in Seneca

county, New York, and vicinity, and insurance thereon to make, by policies of said Amazon Insurance Company, countersigned by said Josiah T. Miller, agent, and renew the same, grant assent to assignments or transfers, and in all other matters and things, to attend to the business and duties of said agency in manner and form prescribed by the company." The company supplied Miller with blank policies signed by the executive officers of the company, which he was authorized to fill up and deliver to applicants for insurance. On his consent being given to assume the proposed risk, he was authorized to fix the premiums to be paid on all applications, the time the contract was to run, and if any special conditions were deemed necessary to be inserted in the policy to protect the rights and interests of the company, he was also authorized to dictate the same. Daily reports were made by the agent to the home office containing a statement of the business done and transacted on the previous day; but previous to the fire no mention was made of this transaction. The charter of the company was not given in evidence.

The negotiations for the contract and the promise to make out and deliver to the applicant a policy were not made and conducted by Mr. Miller, the agent, personally. The plaintiff's application was made to one Jacoby, then living at Seneca Falls, and he, assuming to represent the company, agreed with the plaintiff's agent upon the terms of the insurance. Jacoby at the same time made a memorandum, which contained every fact necessary to be determined for the purpose of filling in the blanks of one of the company's policies in the hands of their agent. This transaction between Jacoby and the plaintiff's agent did not come to Miller's personal knowledge until after the loss occurred.

The court at General Term said: "The defendant, to escape liability on this contract made in its name by one purporting to act for it, disclaims that Jacoby was authorized in any form or manner, or under any circumstances, to, make and conclude a contract of this character.

"The plaintiff's position on the question of Jacoby's authority to make the contract is this: that Miller, as the general agent of the company, having charge of its agency at Seneca Falls, was author-

.ized under his commission and by virtue of his position as superin
tendent of the defendant's business at that place, to employ all the
necessary agents, clerks and surveyors to enable him to conduct the
business with accuracy, intelligence and promptness. That when
he did, in fact, employ others to act under him to do such things
as he himself might do within the limits of his powers and in
connection with his agency, their acts and contracts would be
binding on the company the same as if made personally by Miller,.
the general agent.

"We concur in the plaintiff's position as a legal proposition neces-
sarily resulting from the nature of the power expressly delegated,.
and from the character of the business and the distance the local
offices were from the home department of the defendant's business.
It is not to be presumed the company expected or intended that its
general agent, in a foreign State, would give personal attention to
all its affairs, and he himself make every contract of insurance
entered into by the company within the territorial limits of his
agency. No such limitation on his powers is contained in his
written commission, and it is unreasonable to suppose that the com-
pany intended to that extent to restrain his action and operation.
He was authorized to insure property in several of the largest coun-
ties in the State, where a great amount of valuable property seeks
insurance against loss by fire.

"With a view of ascertaining the defendant's rights under the
contract, we are to construe Miller's powers, so far as the right to
appoint clerks and assistants is concerned. the same as we would the
powers of an agent of a London company, who might be sent here
for the same purpose under like instructions, to act as its agent in
one of the commercial centers of the State. It is known, and so
well and generally known, that no court would be justified in shut-
ting its eyes to the fact that agents and superintendents representing
foreign corporations, authorized to make insurance or to engage in
commercial transactions, usually have powers delegated to them by
the corporations whom they represent, commensurate to the trans-
action of the business carried on under their supervision. The
proper protection to our own citizens dealing with such corporations
through their agents located among us, require the court to hold, as
a matter of law, that such is a fair and reasonable inference, since

foreign corporations are transacting such a vast amount of business in the various departments of trade and commerce and the incidental business connected therewith, there has been an inclination in the courts to adhere to this presumption and not to depart from it unless the limitations placed upon the powers of such an agent are disclosed to the persons who deal with them. Upon this identical subject, the highest federal court has expressed its opinion and formulated a rule of law for its own guide as follows : ' The powers of the agent are *prima facie* coextensive with the business intrusted to his care, and are not narrowed by limitations not communicated to the person with whom he deals. An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business, for the acts and declarations of the agent within the scope of his employment, as if they preceded from the principal.' (*Insurance Company* v. *Wilkinson*, 13 Wall., 222.)

" This rule was maintained and applied in this State, in the case of *Pechner* v. *Phœnix Insurance Company* (65 N. Y., 195), and it was held that ' what the company itself can do at its home office, can, in general, be done by such an agent, who, in the place where the contract is made, represents the company in respect to it. Any other rule would be inconvenient and would greatly interfere with dispatch in business.' In that case the defendant was created, and was doing business under the laws of the State of Connecticut, and the contract in question was made by one of its agents in charge of the business established in one of the villages of this State.

" In *Bodine et al.* v. *Exchange Fire Insurance Company* (51 N. Y., 123), it was said by the court : ' We know, according to the ordinary course of business, that insurance agents frequently have clerks to assist them ; and that they could not transact their business if obliged to attend all the details in person, and these clerks can bind their principals in any of the business which they are authorized to transact. An insurance agent can authorize his clerk to contract for risks, to deliver policies, to collect premiums, and to take payment of premiums in cash or securities, and to give credit for premiums, or to demand cash, and the act of the clerk in all such cases is the act of the agent, and binds

the company just as effectually as if it were done by the agent in person.' " * * *

*Charles A. Hawley*, for the appellant.

*J. N. Hammond*, for the respondent.

Opinion by BARKER, P. J.; HAIGHT and BRADLEY, JJ., concurred.

Motion for new trial denied, and judgment ordered for the plaintiff on the verdict.